## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIJAY GARG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 21-CV-07716 (JPO BCM) |
| | ) |
| KEN ZI WANG, | ) |
| | ) **FIRST AMENDED COMPLAINT AND** |
| | ) **JURY DEMAND** |
| Defendant. | ) |

Plaintiff VIJAY GARG ("Garg"), by way of Complaint, states as follows:

### PARTIES

1. Garg is an individual who is a citizen of India and at the time the complaint was filed on September 15, 2021 remained an Indian citizen, with a permanent residence at B-17, School Road, Uttam Nagar, New Delhi - 110059; he is at present residing in Dubai for work reasons with an ultimate intention to return to India which he treats as his domicile..

2. Ken Zi Wang ("Wang") is a United States citizen and at the time the complaint was filed on September 15, 2021, and was domiciled at tApt. 7C, 502 9th Avenue, New York NY 10018-3592 (the "New York Address"). Alternatively, Wang was at the time of the complaint was still domiciled in the State of California. According to public records available on whitepages.com and the Equifax Credit Header available on westlaw.com, Wang shows or continues to show an address at 219 Brannan Street, Unite 14 J, San Francisco, California 94107 as well as a "previous address" at the New York Address. Whether he remains a citizen of California or as pleaded below, established his domicile in New York, at the time of the filing of the complaint in this action on September 15, 2021, the totality of the evidence of Wang's contacts with New York and the objective evidence belie Wang's subjective assertions of an intent to make Dubai his home as of

September 15, 2021, and therefore this Court has subject matter and personal jurisdiction over Wang.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332 in that this is a civil action between citizen of a state and a citizen or subject of a foreign country, and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

4. In particular, during the period of time in which the primary relevant events between Garg and Wang occurred, Wang continued to use the New York address as his base of operations and confirmed domicile, despite travel to Germany and Dubai.

    a. By his own admission, at the time the complaint was filed, Wang was not living in permanent housing in Dubai but in a hotel, and at no time in exchanges with his authorized legal counsel prior to the filing of the complaint did he convey an intention to remain a permanent resident of Dubai such that that was conveyed to Garg.

    b. He has not relinquished his United States citizenship.

    c. He admitted his use of the New York address on a regular basis in written and oral communications to Garg through at least April 2021 (including confirmation of the time in New York as they set up calls), and not as occasional visits that ended approximately in October 2020.

    d. The Experian Credit Header, last updated January 13, 2022 and available as a public record on westlaw.com, identifies Wang's current address as 219 Brannan St. Unite 14J, San Francisco, and a previous address at the New

      York Address through January 2021. A prior version of the Experian Credit Header, accessed October 21, 2021 with information current through September 1, 2021 and its database last updated September 22, 2021 (i.e., covering the period in which the complaint was filed), showed the New York Address as the last known address.

e. Documents exchanged between Wang and Garg corroborate that Wang flew from New York City to Jakarta, Indonesia on November 8, 2020 and returned to New York on November 12, 2020, and received a Covid test in Indonesia on November 10, 2020 for purposes of returning to the United States. In other words, Wang was returning to New York in November 2020, contradicting a claim of "occasional" use and not "returning" to Berlin or flying from Berlin .

f. In due diligence documents provided by Wang to Garg on November 28, 2020, Wang submitted a Chase Deposit Account Balance Summary identifying Wang's New York Address on a statement dated November 16, 2020, showing an opening date of the account on September 24, 2011, contradicting his claim that he physically used the New York Address "occasionally" and as a "mailing address for certain documents, shipments, or packages *on a few occasions over the past two years—*with the most recent time being approximately October 2020." (emphasis added). On or about March 21, 2021, Wang again sent a Chase bank statement, this time for the time frame January 29, 2021 through February 25, 2021 continued to show Wang's address at the New York Address.

g. On November 29, 2020, Wang signed a due diligence letter, witnessed by Minzhi Ye, a physician (though her witness line is dated November 30, 2020) in which Wang identifies the New York Address as his "usual residential address" and his service address. This is not simply using it as a "mailing address for certain documents," but affirmatively identifying an address for service of process as the New York Address after the period when Wang claimed he was no longer using the "occasional" New York Address. This due diligence document was sent to Garg on December 8, 2020.

h. Wang further provided a reference from Guo Zhanzhi Clarence, Bayfront Law LLC, Director, Advocate and Solicitor, Singapore, dated October 1, 2020, that confirmed Wang's passport number and that Wang was "residing at" the New York Address and has been known to the writer professionally for the past two years, again contradicting the statement by Wang as to "occasionally" staying at the New York Address when he visits. In other words, on a reference letter affirmatively provided by Wang, his reference confirms in October 2020 the residence of Wang with no indicia of any intention by Wang of abandoning it.

i. On December 13, 2020, Wang signed and submitted a form titled Consent To Act as Director in Inclusion Capital Ltd), where Wang's residential and service address was the New York Address, more than a month after the "occasional" use purportedly ceased.

j.  On January 4, 2021, Wang confirmed in writing a call with Garg and another individual in which Wang confirmed he was available at a certain hour that was New York time, further belying an intention to abandon his domicile in New York as of October.

k.  On February 7, 2021, Wang told Garg that he (Wang) was in Dubai for a cryptocurrency event, but did not state he was moving there or staying there, further contradicting Wang's statement that he intended to remain permanently in Dubai, and further confirmed by his admission that he has been living in a hotel.

l.  On March 5, 2021, Wang confirmed in a chat message to Garg that he (Wang) was in New York ("I'm in nyc") as they were setting up a call with a third party.

m.  On March 19, 2021, Wang submitted a bank statement for BREX, showing the New York Address for a summary statement for December 25, 2020 through January 25, 2021. This was specifically requested for proof of Wang's address as demonstrated in the chat and this is the document that was provided—on March 19, 2021, some *five months* after Wang claims to have stopped using that mailing address and a month after he claimed to be living "primarily" in a hotel in Dubai.

n.  On April 6, 2021, Wang confirmed in writing to Garg that he (Wang) "just left Dubai and now back in nyc."

o.  On April 8, 2021, Garg asked again for proof of Wang's address as part of a due diligence request for another project in which Inclusion had invested;

    Wang again sent the BREX statement and a photograph of Wang holding up his U.S. Passport.

p. On or about April 16, 2021, Wang signed and sent the Investment Management Agreement Relating to an Incubator Fund that identified his passport number ant that he was "residing at" the New York Address, which document is dated April 16, 2021.

q. Wang also signed a document titled Consent to Act as Director of Inclusion Capital Ltd. "effective December 7, 2020" which confirmed his "residential *and service"* address as the New York Address, which was sent by Wang to Garg on Telegram chat on December 13, 2020.

r. On information and belief, on July 14, 2021, a friend of Wang's related to another friend who conveyed the information to Garg that Wang would be back in New York City and would return certain keys to the second friend. This is confirmed in a chat message dated July 14, 2021.

s. On or about September 17, 2021—two days after the complaint was filed—Garg was told by a third party that Wang confirmed to a third party that he (Wang) lives in New York and had bought a new place. This is confirmed in a chat message dated September 17, 2021. Public records available on whitepages.com show an address at 4705 Center Blvd. Apt. 2913, Long Island City, NY 11109-5706 for Wang, with information retrieved on January 24, 2022.

t. Another third party on or about November 3, 2021 confirmed by chat that he (Wang) was in New York City and provided that information to Garg.

u.  Wang advertises himself as a co-founder of Cere Network. On the Cere Network website, Wang is listed as one of four current employees as well as being co-founder, and on the LinkedIn available page for Cere Network, Wang is identified as a Cere employee in the United States. His information statement under the "People" category for Wang, and publicly available on the LinkedIn cite, shows Cere Network and that Wang has been with it "2018-Present (2 years) and Cere Network is listed in New York, New York contradicting his statement that he has not been an employer or employee in New York..

v.  Wang's LinkedIn resume as provided to Garg identifies Wang as co-founder of Cere Network, 2018 to present identified in "New York, New York," and advisor and investor in Props 2017 to present in "Greater New York City area."

w.  Publicly available business and formation records for DK Technology PTE. Ltd., a Singapore-registered company, incorporated on January 28, 2021 identifies Wang as an officer and shareholder and has the New York Address listed under his name.

x.  Wang is a director and shareholder of a British Virgin Islands company called XXXXXX Ltd., effective as of December 16, 2020, which document he signed electronically using a New York City, New York IP address indicating his physical presence in New York on that date. He signed a share certificate for this company on December 24, 2020 using the same New York City IP location.

        y. On or about February 25, 2021, Wang signed a resignation letter as director and member of another British Virgin Islands company, Reef Technology Ltd., in which he listed his passport number and the New York Address.

5. The above allegations demonstrate that Wang remains a United States citizen and that before, at the time the complaint was filed and thereafter, he manifested an intention to maintain his citizenship in New York through the referenced activities. His claim of using the New York Address for a "mailing address for certain documents, shipments, or packages on a few occasions over the past two years" is belied by objective, documented evidence of an identification of New York and in particular, the New York Address, as his ongoing and continued residence, his address provided for his New York banking arrangements, his address for service, and the address utilized for his communications not only with Garg but with other third parties with an intention they rely on that New York Address. Public records and his own written communications as voluntarily provided to Garg by mutual acquaintances confirm that Wang continues to have a residence or property in New York, and that he continued to travel back and forth to New York. He is employed by a company he helped found that he identifies as located in New York, New York., Contrary to his claims, he has continued to be in New York on a regular, not occasional, basis even after the complaint was filed. Such objective facts belief Wang's subjective statements. At the time the complaint was filed, there were no statements on record provided by Wang through council as to an intention to live permanently in Dubai, and all other indicia were that the New York Address remained his address for domicile in New York at least as of September 2021 and for some time thereafter.

6. This Court also has personal jurisdiction over Wang based on his purposeful availment of New York with regard to the claims arising out of or relating to the facts alleged

herein and as detailed above. The contractual relationship was formed primarily during communications and exchanges when Wang was domiciled in New York. The period of communication containing the representations made between Garg and Wang was from July 2019 through April 2021, when matters deteriorated. Wang admits to using the New York address during the past two years. The transactions in which they were involved that formed the contract were between September and December 2020, and events leading up to the formation occurring in the months preceding—all of which involved the confirmation of the New York Address and Wang's physical presence in New York. The contract between them grew out of those communications made during the time frame that Wang was in New York as a matter of his domicile there. As pleaded above, at least two bank accounts are identified that utilized Wang's New York Address, he founded a company with a New York location in which he is publicly noted as an employee, and proof of residence—both by Wang's own admission on documents signed for the relevant period—and third party information indicate the propriety of assertion of personal jurisdiction over Wang. He remains employed by and affiliated with New York-located companies. On information and belief, he maintains a residence in New York.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because defendant Wang resides in this jurisdiction and the cause of action arises out of evens that occurred in this jurisdiction.

**FACTUAL ALLEGATIONS COMMMON TO ALL COUNTS**

8. Garg and Wang came to know each other in or about July 2019 when Garg, on behalf of his company, approached Wang, for the purpose of investment in Cere Network, in which Wang was one of the co-founders.

9. After knowing each other for more than a year, and building up trust, on or about September 11, 2020 Wang and Garg agreed to start a new crypto fund. Garg relied upon representations by Wang that Wang had knowledge and experience working at various funds including AU21 Capital.

10. Garg was concerned about potential conflicts with Wang's current position in another such fund, AU21 Capital. Wang denied any officer or owner position, telling Garg he (Wang) was an employee. and that AU21 was essentially owned by a Mr. Lee. Wang told Garg this to assure Garg that he, Wang, was not an owner, but just an employee, and there was no impediment to Wang's leaving and going into business with Garg.

11. Wang confirmed himself that AU21 Capital was completely funded in-house by that Mr Lee. Garg asked Wang if Wang is a shareholder in AU21 to which Wang replied that he gets "pay plus carry" and was ready to go out and start his own company. On information and belief, the chat that Wang expressed these thoughts in has been deleted by Wang.

12. As it turned out, the AU21 Capital website refers to Chandler Guo, of the founders of gate.io, a crypto exchange. Gate.io is arguably considered one of the top ten crypto currency exchanges in the world. There is no reference to a Mr. Lee, As stated on its website, AU21 Capital was founded in 2017 by Wang and Chandler Guo with the purpose of backing promising blockchain entrepreneurs. It lists among its portfolio Sovryn and HydraDx. Wang is still shown as affiliated with AU21 Capital.

13. Wang further represents that he was Vice President and General Manager at Huobi Global, an established cryptocurrency exchange.

14. Relying upon their relationship of trust and Wang's representations as to his experience, and lack of conflict regarding gate.io, he and Garg founded Inclusion Capital Ltd, a

British Virgin Islands company having Reg No. 2049603, with each becoming 50% partner in the crypto fund.

15. Wang further approached Garg with regard to certain investment opportunities on an individual basis. Accordingly, Garg invested USD $130,000 (approximately the equivalent of USDT130,000) in Dhedge, Sovryn, HydraDX and Public Mint.

16. On September 9, 2020, Wang informed Garg that he got USDT 20,000 allocations in Dhedge, a Crypto Start- Up. Wang advised he would contribute USDT 5,000 and proposed Garg to invest USDT 15,000. On September 10, 2020, Wang asked Garg to transfer USDT 15,000 to his crypto wallet 0xC022458FcE8965c59fe2a8F914A9b7aE45528517 .

17. Accordingly, on September 11, 2020, Garg invested USDT 15,000 in Dhedge by sending USDT 15,000 to Wang's crypto wallet.  Proof of the payment on the investment is found at

https://etherscan.io/tx/0x8ee1acfb65521541389f7fdb72d15176f88e65c97492b3062f2f5956ebdb44e8 .

18. On November 17, 2020, Wang proposed to Garg that Garg invest in Sovryn, a Crypto Start- Up. Wang represented to Garg that many large crypto hedge funds have invested in Sovryn. Garg asked Wang for a direct introduction to which Wang said Sovryn was not taking any more introductions and had completed its fund raising.

19.  On December 10, 2020, Wang again contacted Garg and proposed that he (Garg) invest USDT 25,000 in Sovryn through him (Wang). On the same date, Wang introduced the HydraDx project to Garg and that Garg invest USDT 15,000 through Wang only. Wang also stated that a renowned crypto hedge fund has already invested in HydraDx. Wang further stated that Garg would get equity in HydraDx at USD $6,000,000 fully diluted valuation without any additional

investment. Wang invested in HydraDx, and would get equity shares in the company. He would register the same shares he received under Garg's name for Garg's amount of investment with him, which would come to 0.25% equity shares of HydraDx for Garg. This was an equity plus tokens deal, in which projects raise money via equity and issue tokens to equity holders in proportion to their equity investment.

20.     Wang insisted Garg send USDT 40,000 towards both the above companies on December 15, 2020, being USDT 15,000 in HydraDx and USDT 25,000 in Sovryn to his crypto wallet 0xAbeEcb05799E2a5d5e996D92cCA18a498a82b5b0. On the same date, Garg again showed his concern about distribution of tokens from Wang to Garg upon receipt of these tokens by Wang is his wallet to which Wang assured Garg that it not an issue for him and he will manage. On information and belief, the chat that Wang expressed these thoughts in has been deleted by Wang.

21.     Based on Wang's representations, on December 16, 2020, Garg sent USDT 40,000 to Wang's crypto wallet. This is documented at https://etherscan.io/tx/0xe0c5941d8079fcc616e3fb51b17b295022d22b8d84c41e47bdac010f4dfc9003 .

22.     Wang indicated that no Sovryn tokens would be issued until August. Garg requested that Wang give his (Garg's) address to Sovryn (as well as other projects). As of the date of this complaint, Garg has still not received any Sovryn tokens.

23.     Wang proposed that both he and Garg would contribute a sum of USDT 75,000 each, amounting to a total investment of USDT 150,000 in a company called Public Mint. Wang further represented that the tokens as received would also be divided equally. Accordingly, USDT 75,000 were duly transferred by Garg to Wang's wallet bearing No.

0xc58304f545d166779215a0d33b2c4496838d9869 via Blockchain on 03.02.2021. Proof of the payment is found at https://etherscan.io/tx/0xe5e33388e35b4add82416ebb1b9d925f12a9452a3e4c0581e5193a350a5a26ac .

24. In February 2021, the first tranche of tokens in Public Mint were unlocked and Wang transferred half of the tokens received via Blockchain from his wallet to Garg's wallet on February 26, 2021, confirming the agreement and the obligation.

25. After a considerable time, and despite demand for turnover and delivery, no further tokens were turned over and delivered by Wang. On inquiry in this regard, Wang refused to give further tokens as obligated to Garg, with the intention of depriving him of his due proceeds, and retaining them for himself.

26. Nonetheless, on or about May 26, 2021, Wang then communicated in writing to Garg that he, Wang, would honor the commitments agreed upon, and Garg through Indian counsel forwarded documentation to that effect. On or about June 5, 2021, Wang notified Garg's counsel that his, Wang's counsel, "will take it from here." A follow up by Indian counsel on June 15, 2021 was answered by Wang's Singapore counsel that it was "in the process of taking instructions,"

27. Garg then retained U.S. counsel, admitted in New York, who communicated with Wang's Singapore counsel, demanding turnover and payment. That communication was met with a denial of all allegations and a demand for burdensome and irrelevant documentation.

28. Essentially, by word and deed, Wang breached his agreement by failing to turn over the tokens due and equity interest due, and by stating that he would not honor any further commitments under the agreement between the parties.

29. As a result of the passage of time and the reactions of the market, Garg has been further damaged as he was deprived of the opportunity to receive the number of tokens or value determined on date of release of tokens, and claims damages as to these lost opportunities or mitigation efforts.

## COUNT ONE
## BREACH OF CONTRACT

30. Garg incorporates the allegations in Paragraphs 1-29 above as if fully set forth herein.

31. Garg and Wang entered into a series of agreements, confirmed in their communications and by the payment of Garg to Wang as documented, for investment in four companies, with a commitment for Wang to deliver tokens of these four companies and 0.25% equity shares of the company behind HydraDX to Garg. Garg tendered money to Wang for the specific purposes of investment in particular entities, which money was accepted by Wang for the express purposes.

32. The details of the companies, the investment, proof of payment, number of tokens owed and the value (which may change time to time as per market price on the relevant date),, are summarized as follows:

| S.No | Project Name | Token Name | Amount Invested by Garg with Wang (In USD) | Payment Proof of amount invested by Garg | Number of Tokens Owed by Wang to Garg | Rate per token (In USD) | Value of Tokens (In USD) as at 11.08.2021 | Website Reference (To obtain rate per token) |
|---|---|---|---|---|---|---|---|---|
| 1 | Dhedge | dHedge DAO (DHT) | 15,000 | https://etherscan.io/tx/0x8ee1acfb65521541389f7fdb72d15176f88e65c97492b3062f2f5956ebdb44e8 | 4,920.21 | 1.14 | 5,609.03 | https://www.coingecko.com/en/coins/dhedge-dao |
| 2 | HydraDx | HydraDX (XHDX) | 15,000 | https://etherscan.io/tx/0xe0c5941d8079fcc616e3fb51b17b295022d22b | 14,705,882 | 0.112385 | 1,652,720.55 | https://www.coingecko.com/en/c |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | 8d84c41e47bdac010f4dfc9003 | | | | oins/hydradx |
| 3 | Sovryn | Sovryn (ESOV) | 25,000 | https://etherscan.io/tx/0xe0c5941d8079fcc616e3fb51b17b295022d22b8d84c41e47bdac010f4dfc9003 | 250,000 | 12.17 | 3,042,500 | https://www.coingecko.com/en/coins/sovryn |
| 4 | Public Mint | Public Mint (MINT) | 75,000 | https://etherscan.io/tx/0xe5e33388e35b4add82416ebb1b9d925f12a9452a3e4c0581e5193a350a5a26ac | 1,363,636 | 0.177183 | 241,613.11 | https://www.coingecko.com/en/coins/public-mint |
| **TOTAL** | | | **130,000** | | | | **4,942,442.69** | |

33.  Despite demand, apart from the original confirming transfer regarding Public Mint, no other transfers or payments were made.

34.  Garg has fully performed each of his contractual obligations. Wang has materially breached the express warranties and the Agreement, damaging Garg.

## COUNT TWO
## UNJUST ENRICHMENT

35.  Garg incorporates the allegations in Paragraphs 1-34 above as if fully set forth herein.

36.  Wang has received USD $130,000 from Garg that was earmarked for investment, which investment was made and the fruits of which have been retained by Wang.

37.  Garg is entitled to the number of tokens and equity as stated above resulted from the original investment that was made by Garg with Wang.

## COUNT THREE
## FRAUD IN THE INDUCEMENT

38.  Garg incorporates the allegations in Paragraphs 1-37 above as if fully set forth herein.

39. Wang made factual misrepresentations to Garg to induce Garg to make the investments pleaded above, upon which representations Garg relied to his detriment, and which representations turned out to be false, damaging Garg.

40. Garg was induced to invest with Wang and entrust him with his money for the purposes of the investments and procurement of equity interest as pleaded above, based on representations relating to Wang's integrity and experience.

41. Specifically, the representation that Wang was only an employee of AU21 Capital was false at the time it was made, with the intention that Garg rely on it. In addition, the statement that Wang was a co-founder of AU21 Capital and the representation that Wang would leave AU21 Capital was also false as he remains there, and the representation that he would adequately devote time and attention to Inclusion Capital was also false, as he has not devoted that time. These statements were inducements not just for potential business arrangements between Garg and Wang as to formation of a cryptocurrency fund, but also as an inducement for Garg to trust Wang with his (Garg's) money for personal investment purposes.

42. Consequently, Garg was led to believe by Wang that Wang had been truthful in his representations as to his position with his companies and his intentions of setting up a new company with Garg. Based on this, Garg believed there was a position of trust between him and Wang. After making the investment of USD $130,000, Garg learned that all that Wang had said about leaving his company to start Inclusion was false. If Garg had known that Wang had no intention of devoting his time and effort to Inclusion and there was no intention of forming an ongoing business relationship by Wang with Garg, then Garg would have not made the investments pleaded above.

43. At all times relevant herein, Wang acted with malice in these misrepresentations.

## COUNT FOUR
## BREACH OF FIDUCIARY DUTY

44. Garg incorporates the allegations in Paragraphs 1-43 above as if fully set forth herein.

45. Wang acted as agent for Garg in soliciting and taking the investments, by agreeing to accept money for earmarked and dedicated purposes, signifying a position of trust and confidence. Wang agreed to take money from Garg and invest it as pleaded above, but instead, breached that trust and confidence, thereby establishing a position of trust and a fiduciary relationship.

46. By investing Garg's money and failing to turn over the tokens and equity interest in the company behind HydraDx due to Garg, Wang engaged in misconduct and breached that relationship, directly causing damage to Garg.

## COUNT FIVE
## CONVERSION

47. Garg incorporates the allegations in Paragraphs 1-46 above as if fully set forth herein.

48. At all times relevant herein, Wang acted with intent to interfere with the ownership and possessory rights of Garg to the tokens, their value and the equity interest in HydraDX.

## COUNT SIX
## NEGLIGENT MISREPRESENTATION

49. Garg incorporates the allegations in Paragraphs 1-48 above as if fully set forth herein.

50. Wang made factual misrepresentations to Garg during the course of Garg's investment under Wang's name alleged above.

51. Garg justifiably relied on the communications and Wang's negligent misrepresentations proximately caused Garg's injury. At all times relevant herein, Wang acted with malice in these misrepresentations.

WHEREFORE, Plaintiff Vijay Garg requests this Court enter judgment as follows:

1. Enjoining defendant Ken Zi Wang to turn over to Garg all tokens due and owing as pleaded herein;

2. Enjoining defendant Ken Zi Wang to cause the transfer of the equity interest in HydraDX to Garg;

3. Awarding actual and direct damages, consequential, incidental and special damages, interest, costs of suit and attorneys fees to the extent allowed by law;

4. Awarding punitive damages; and

5. Awarding such other relief as the Court deems proper.

## JURY DEMAND

Pursuant to Fed. Rule Civ. Proc. 38, Plaintiff Vijay Garg. demands a trial by jury as to all issues so triable.

Dated: January 28, 2022                     Respectfully submitted,

**CLARK HILL PLC**

By: /s/ *Steven M. Richman*/
Steven M. Richman, Esq. (#1714237)
830 Third Avenue, Suite 200
New York, NY 10022
Tel: 646.395.8580; Fax: 646.395.8700

210 Carnegie Center, Suite 102
Princeton, NJ 08540
Tel: 609.786.2911; Fax: 609.785.2971
Email: srichman@clarkhill.com
Counsel for Plaintiff Vijay Garg